**IN THE COURT OF APPEALS OF IOWA**

No. 17-0606
Filed August 2, 2017

**IN THE INTEREST OF J.A. and M.K.,**
**Minor Children,**

**K.S.K., Mother,**
   Appellant.

_____

Appeal from the Iowa District Court for Dallas County, Virginia Cobb, District Associate Judge.

A mother appeals the termination of her parental rights to two children. **AFFIRMED.**

Gina E. Verdoorn of Sporer & Flanagan, Des Moines, for appellant mother.

Thomas J. Miller, Attorney General, and Ana Dixit, Assistant Attorney General, for appellee State.

Kayla Stratton of Juvenile Public Defender's Office, Des Moines, guardian ad litem for minor children.

Considered by Vaitheswaran, P.J., and Tabor and Mullins, JJ.

**TABOR, Judge.**

A mother, Kathryn, appeals the juvenile court's decision to terminate her parental rights to two children, three-year-old J.A. and two-year-old M.K. She challenges the sufficiency of the State's proof of the statutory grounds for termination and contends termination is not in the best interests of the children. After independently reviewing the record, we find clear and convincing evidence the children cannot be safely returned to Kathryn's care and termination is in their best interests.[1]

## I. Background Facts and Proceedings

This family first came to the attention of the Iowa Department of Human Services (DHS) in the summer of 2014 after Kathryn filed a domestic-abuse petition against the father, Johnnie.[2] The DHS had concerns about the continuing domestic violence perpetrated by Johnnie and about the parents' drug use around the children. The juvenile court ordered J.A. to be removed from his parents' custody due to these concerns.[3]

---

[1] Our review is de novo. *See In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). We are not bound by the factual findings of the juvenile court, but we do give them weight, particularly with regard to the credibility of witnesses. *See id.* "We will uphold an order terminating parental rights if there is clear and convincing evidence of grounds for termination under Iowa Code section 232.116." *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). Evidence is "clear and convincing" when there are no "serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence." *See M.W.*, 876 N.W.2d at 219 (alteration in original) (citation omitted).

[2] Kathryn sought a civil protective order in June 2014 but later denied she was the victim of domestic abuse.

[3] Kathryn has two older children from a previous relationship who were included in this removal order. As of August 5, 2015, the oldest child permanently resided in Utah with his biological father. As of November 2016, Kathryn's second oldest child was in a

The DHS placed J.A. in foster care in August 2014. Kathryn began mental-health treatment that same month at the recommendation of the DHS. A few months after she began therapy, she and Johnnie were married. The juvenile court adjudicated J.A. a child in need of assistance (CINA) in November 2014.

Kathryn was generally consistent with therapy for the next two years, but she discontinued treatment in October 2016. Kathryn worked with a therapist on issues concerning domestic violence. The therapist testified Kathryn was "a natural caregiver" and would often get "sucked back" into a dangerous relationship with Johnnie when he needed help due to his mental-health and substance-abuse issues. The therapist believed Kathryn was eventually able to identify these triggers, and the two of them explored strategies for Kathryn to leave Johnnie safely. The therapist did not note any substance-abuse problems at the beginning of Kathryn's therapy. Kathryn confided she had an "addiction" to the relationship with Johnnie rather than to controlled substances.

Kathryn and Johnnie participated in services provided by the DHS and moved to semi-supervised visits in March 2015. The juvenile court held a review hearing the following month and found Kathryn and Johnnie were making progress. J.A. returned to his parents' care in mid-April for a trial home visit.

The progress Kathryn and Johnnie exhibited in the months after J.A. was adjudicated a CINA stalled near the end of his first trial home visit. Kathryn, who was pregnant with M.K. at the time, testified she stopped living with Johnnie in

relative's care. Kathryn's parental rights to her two older children are not at issue in this appeal.

June 2015. According to Kathryn, Johnnie had threatened to hurt her, so she decided to leave him. This incident of domestic violence resulted in another protective order preventing contact between the parents, and J.A. once again returned to foster care in June.

M.K. was born in July 2015. The court adjudicated M.K. a CINA on August 19 because she was born with a heart condition that left her vulnerable when coupled with her parents' unresolved mental-health issues and Johnnie's issues with domestic violence. M.K. remained in Kathryn's care following the adjudication, while J.A. stayed in foster care in the months following M.K.'s birth. Kathryn signed a safety plan in August 2015, agreeing she would only communicate with Johnnie by email and would interact with him only to co-parent J.A. and M.K. In November, the court placed J.A. back in Kathryn's care, where he remained with M.K. for the next six months.

On May 17, 2016, Kathryn agreed to removal of J.A. and M.K. based on her drug use. Her children's removal in May 2016 marked the first time the DHS focused on Kathryn's substance abuse. Kathryn began substance-abuse treatment on May 19 at New Beginnings in Des Moines and attended until the second week in July. Kathryn told her substance-abuse counselor she used methamphetamine almost daily from December 2015 to May 2016. Kathryn would often use with Johnnie and give him unapproved access to J.A. and M.K, despite the DHS safety plan and court order prohibiting his contact with Kathryn and the children.

Visitation between Kathryn and her children was always positive. The DHS had no concerns regarding Kathryn's treatment of her children during visits.

Kathryn eventually had supervised visits twice a week for an hour and a half each time.[4] Both children had appointments with medical specialists. The record reflects no problems with Kathryn's knowledge of cardiopulmonary resuscitation, so she was able to safely to participate in visits with M.K. in spite of her heart condition. J.A. had an underdeveloped pituitary gland for which he was seeing an endocrinologist, but his condition never caused any problems for Kathryn during their visits.

Kathryn began work at Perry Health Care Center in June 2016, where she performed well as a licensed practical nurse. Her employer submitted a letter to the court outlining many her duties. Her employer did not suspect drug use and did not question her honesty or integrity. In July, not long after Kathryn started work at Perry Health Center, the sweat test she provided for the DHS was positive for methamphetamine.

Kathryn did not successfully complete her substance-abuse therapy at New Beginnings. She changed treatment providers in mid-July 2016, stating she had a difficult commute from her home in Perry to treatment in Des Moines. She was admitted to treatment at Zion Recovery in Perry on August 4, and she completed her substance-abuse goals five weeks before she stopped attending treatment. Kathryn provided a urine sample at Zion on the day of her admission, which came back positive for amphetamines. Kathryn's prescribed ADHD medication accounted for the positive amphetamine result.

---

[4] Kathryn's visitation had decreased from three times per week due to scheduling issues with her family safety, risk, and permanency worker.

The DHS was concerned Kathryn was not being honest about her substance-abuse history with her therapist at Zion. That therapist told the DHS Kathryn had not revealed her previous drug use or the positive tests. Kathryn also had not informed Zion about her previous treatment provider's concerns that her ADHD medication could impede her recovery from methamphetamine abuse.[5]

Due to his unresolved mental-health and substance-abuse issues and his low participation in services offered by the DHS, Johnnie's parental rights were terminated on August 8, 2016.[6] Johnnie would later tell the DHS he began living at Kathryn's home on August 25 and together they moved his belongings into her house in the middle of the night so they would not be seen. Kathryn disputed Johnnie's account, claiming a friend dropped off Johnnie's belongings to store at her home.

Kathryn participated in another urinalysis at Zion on September 14. This test came back negative for methamphetamine but positive for amphetamines, a result consistent with taking her ADHD medication. When Kathryn submitted to a sweat test through the DHS on September 17, it came back positive for methamphetamine. Kathryn denied the results, claiming her ADHD medication also caused the positive methamphetamine result.

On September 21, 2016, Kathryn was the victim of a particularly violent incident with Johnnie when she found him in her home uninvited. This led to a

---

[5] Kathryn's substance-abuse provider at New Beginnings recommended she not take amphetamines to treat her ADHD due to her history of substance abuse, but Kathryn disregarded that advice.
[6] Johnnie is not a party to this appeal.

standoff between Johnnie and the police. Kathryn told a responding officer Johnnie had assaulted her, giving her two black eyes and leaving bruising on her neck. The police learned Kathryn was storing many of Johnnie's belongings in her home, as well as caring for their dog. This incident led the DHS to believe Kathryn had more contact with Johnnie than she was reporting.

After this incident, Kathryn began to miss mental-health appointments. Her therapist testified it would have been better for Kathryn not to stop treatment so soon after an upsetting event. But Kathryn told her therapist it was difficult for her to fit in the appointments with her work schedule and visits with her children.

Kathryn's last visit with her mental-health provider was in mid-October 2016. Kathryn's substance-abuse therapist at Zion suggested she remain enrolled in the substance-abuse program after she completed her goals to combat the emotional strain caused by her children's removal and Johnnie's abuse. But Kathryn decided not to remain enrolled in the program. She did not show up for ten drug tests required by the DHS between July and December 2016. Kathryn testified she stopped showing up for these tests because she was planning for her parents to adopt the children.[7]

The State filed a petition to terminate Kathryn's parental rights on December 6, 2016. The juvenile court held the termination hearing over two days, December 13, 2016, and January 9, 2017. On the second day of the hearing, a social worker testified Kathryn had returned to Zion for substance-

---

[7] The DHS found Kathryn's parents were not appropriate candidates for adoption after Kathryn's father tested positive for methamphetamine during a hair test in November 2016.

abuse treatment in January. In a letter admitted during the hearing, Kathryn's substance-abuse counselor at Zion reported her urinalysis was negative when she returned to treatment and she had stopped taking the ADHD medication that produced her previous positive amphetamine result. The counselor also believed Kathryn was committed to parenting her children and would be able to provide a safe and nurturing environment for them.

On March 30, 2017, the juvenile court terminated Kathryn's parental rights under Iowa Code section 232.116(1)(d) and (h) (2016). The court recognized Kathryn was "an intelligent, educated woman with significant skills," but nevertheless concluded she had unaddressed issues with substance abuse and violent relationships that did not allow the children to return home safely.

Kathryn appeals the juvenile court's termination order.

## II. Analysis

### A. Statutory Grounds

Kathryn argues the State did not prove with clear and convincing evidence the grounds for termination under section 232.116(1)(d). Specifically, she challenges the State's proof of the final requirement of subsection (d), that the circumstances that led to the CINA adjudication continued to exist despite the offer or receipt of services. Because Kathryn does not challenge the termination under subsection (h), we can affirm on that ground. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010) (holding even if only one ground for termination is proven, the court may order the termination). But even if we construed Kathryn's argument broadly to include a challenge to the fourth element of section 232.116(1)(h)—requiring clear and convincing proof the children could not be returned to her

care—we would still find the statutory grounds satisfied. The children are both three years of age or younger, they have both been adjudicated as CINA, both have been removed from their mother's custody for more than six consecutive months, and clear and convincing evidence shows they cannot be returned to their mother's care at the present time. *See* Iowa Code § 232.116(1)(h).

The juvenile court identified three concerns regarding Kathryn's parental ability: her substance abuse, her mental health, and her pattern of abusive relationships. Kathryn maintains she willingly participated in the services provided to combat these issues, though she admits not consistently seeking mental-health therapy. She claims she has no contact with Johnnie and denies using controlled substances.

We find clear and convincing evidence the children cannot be safely returned to Kathryn's care. After two years of receiving therapy to improve her mental health, Kathryn's attendance grew inconsistent just when she was confronting traumatic events in her life. Although Kathryn had been working through her issues of being victimized by Johnnie, those domestic-violence issues were still ongoing after years of therapy. She admitted using methamphetamine with him and willingly stored his belongings in her home when she claimed she was not in contact with him.

At the beginning of the CINA case, Kathryn did not have an ongoing problem with methamphetamine abuse, but she admitted using the drug recreationally in her past. Her more severe drug problems occurred after a year of participating in DHS services. She used methamphetamine regularly from December 2015 to May 2016. She had two positive sweat patch tests for

methamphetamine between July and December 2016 and missed ten drug tests in the same time period.

These circumstances indicate the children cannot be safely returned to Kathryn's care. Her drug use worsened while she participated in services. It is also concerning that she did not ultimately take responsibility for the positive methamphetamine test results in 2016. *See In re A.B.*, 815 N.W.2d 764, 775 (Iowa 2012) (holding a father's denial of having any substance-abuse issues when he had tested positive for methamphetamine was enough to terminate his parental rights despite his positive participation in parenting services). Not until January 2017 did she follow the recommendation of her substance abuse therapist to discontinue use of the narcotic ADHD medication. Termination under section 232.116(1)(h) is proper.

### B. Best Interests

After concluding the State has proven statutory grounds sufficient for termination, we must find termination is in the best interests of the children. *See A.B.*, 815 N.W.2d at 776. We consider three best-interests factors: (1) the child's safety, (2) the best placement for furthering the long-term nurturing and growth of the child, and (3) the physical, mental, and emotional condition and needs of the child. Iowa Code section 232.116(2); *see also P.L.*, 778 N.W.2d at 37.

Kathryn asserts the strong bond she has with her children is a compelling reason not to terminate her parental rights. Closeness between a parent and child is a mitigating factor provided in Iowa Code section 232.116(3)(c). But the closeness of the parent-child relationship does not automatically outweigh other

factors in support of termination. *See In re N.F.*, 579 N.W.2d 338, 341 (Iowa Ct. App. 1998).

The record shows Kathryn was engaged and affectionate during her visits with J.A. and M.K. But we must balance those positive connections against the risk posed by her recent difficulties with methamphetamine abuse and inability to protect the children from the domestic violence perpetrated by Johnnie. J.A. and M.K. live together with foster parents who are interested in adopting them and are able to meet their medical needs. Opening them to the possibility of adoption in a stable home without the threat of domestic abuse or exposure to controlled substances will further the physical, mental, and emotional needs of the children. Accordingly, we find termination of Kathryn's parental rights is in the best interests of the children.

**AFFIRMED.**